```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                  :
METROPOLITAN LIFE INSURANCE
COMPANY                           :

                                  :  Civil Action No. DKC 14-3697
      v.
                                  :
CARL SMITH, et. al.
                                  :
```

**MEMORANDUM OPINION**

Presently pending in this statutory interpleader action are: (1) a motion for summary judgment filed by Defendant Starelle Gladden (ECF No. 23); and (2) a motion for discharge filed by Plaintiff Metropolitan Life Insurance Company ("Plaintiff" or "MetLife") (ECF No. 28).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendant Gladden's motion for summary judgment will be denied, and Plaintiff's motion for discharge will be granted.

I. **Background**

   A. **Factual Background**

James Innocent (the "Decedent") died due to multiple gunshot wounds on June 24, 2010.  His death was ruled a homicide. (ECF No. 1-4).  Prior to his death, the Decedent participated in the Washington Metropolitan Area Transit Authority ("WMATA") Employee Health & Welfare Plan (the "Plan").

The Plan included group life insurance coverage, which was funded by a group life insurance policy issued to WMATA by Plaintiff MetLife (the "Group Policy"). Under the terms of the Group Policy Certificate of Insurance (the "Certificate"), the Decedent was permitted to name his beneficiary. (*See* ECF No. 1-1). At the time of his death, the Decedent maintained life insurance coverage totaling $102,000.00 (the "Life Insurance Benefits"). (ECF No. 1-2).

The Life Insurance Benefits became payable to the authorized beneficiary upon the Decedent's death, pursuant to the terms of the Certificate. According to the most recent "Designation of Beneficiary and Contingent Beneficiary(ies)" (the "Designation") on file dated December 1, 2008, the Decedent listed Defendant Gladden as the primary beneficiary and Defendant Carl Smith as the contingent beneficiary. (ECF No. 1-3). Defendant Gladden was the Decedent's fiancée, and Defendant Smith was the Decedent's friend. Immediately after the Decedent's death, Defendant Gladden made a funeral home assignment to Defendant Beta Capital Corp. ("Beta Capital") for $6,695.00. (ECF No. 1-5). Defendant Gladden also completed and submitted a beneficiary claim form (the "Claim") requesting that MetLife distribute the Life Insurance Benefits to her. (ECF No. 1-6).

MetLife informed Defendant Gladden that because the Decedent's death was ruled a homicide, a copy of the police report was needed to process the Life Insurance Benefits. (ECF No. 28-8). Defendant Gladden responded by providing a copy of the reward poster in connection with the investigation into the Decedent's death, as well as contact information for Detective Allyson Hamlin of the Prince George's County Police Department (the "Department"). (ECF No. 28-9, at 2). MetLife contacted Detective Hamlin in October 2010. (ECF No. 28-10). She informed MetLife that Defendant Gladden had not been ruled out as a suspect in the Decedent's death. (ECF No. 28-11). MetLife requested a statement from the Department again in December 2010 and throughout 2011. (ECF Nos. 28-12; 28-13). In January 2012, Detective Hamlin advised MetLife that the Department still could not rule out Defendant Gladden as a suspect in the Decedent's death. (ECF No. 28-14). According to MetLife, it continued to contact the Department seeking updated information. (ECF No. 28-1, at 4). In April 2013, Detective Hamlin informed MetLife that although the Decedent could be ruled out as an aggressor, Defendants Gladden and Smith had not been ruled out as suspects. (ECF No. 28-15). The following month, Detective Hamlin notified MetLife that no charges had been filed against Defendants Gladden and Smith, and that the status of the case was unlikely to change. (ECF No. 28-16).

MetLife contacted Defendant Gladden seeking a claimant affidavit that would allow MetLife to determine whether the Decedent's relatives or heirs have potential claims to the Life Insurance Benefits. (ECF No. 28-17). Defendant Gladden provided a properly notarized claimant affidavit on January 18, 2014. (ECF No. 28-19). MetLife also requested a claimant affidavit from Defendant Smith, the contingent beneficiary, but he never responded to multiple attempts to contact him at his last known address. (ECF Nos. 28-1, at 4-5; 28-18). By letter on February 6, 2014, MetLife advised Defendants Gladden, Smith, and J.I. (the minor son of Defendant Gladden and the Decedent) that their potential claims to the Life Insurance Benefits were adverse to one another and "raise questions of fact and law that cannot be resolved by MetLife without exposing the [P]lan to the danger of double liability." (ECF No. 28-20, at 1). MetLife noted that, before initiating an interpleader action, it sought to give the defendants "the opportunity to try to resolve the matter amicably in order to preserve the benefits from litigation costs and fees." (*Id.* at 2). According to MetLife, it received no response from Defendants Gladden, Smith, J.I., and Beta Capital (collectively, the "Defendants"). (ECF No. 28-1, at 5).

4

**B. Procedural Background**

On November 25, 2014, MetLife filed a complaint in interpleader pursuant to 28 U.S.C. § 1335 seeking certainty regarding Defendants' respective rights to the Life Insurance Benefits.  (ECF No. 1).  Defendants Beta Capital, Gladden, and J.I. answered.  (ECF Nos. 11; 14; 18).  Defendant Smith did not answer, and his default was entered on September 30, 2015.  (ECF No. 22; *see* ECF Nos. 19; 20).

MetLife also moved to deposit the Life Insurance Benefits into a court registry, and Defendant Gladden consented.  (ECF Nos. 21; 24).  The court granted MetLife's motion, and its counsel provided a check in the amount of $104,691.78.  (ECF Nos. 25; 27).

On October 8, Defendant Gladden moved for summary judgment requesting that the Life Insurance Benefits be distributed to Defendant Gladden and that MetLife's demand for attorneys' fees and costs be denied because, according to her, there was no basis to initiate an interpleader action.  (ECF No. 23). MetLife responded in opposition.  (ECF No. 26).  As a disinterested stakeholder, MetLife explains that it "does not oppose Defendant Gladden's summary judgment motion to the exten[t] that she contends that there are no genuine factual disputes to a finding that she is the appropriate beneficiary and that she is entitled to the [Life Insurance Benefits] as a

matter of law." (*Id.* at 2). MetLife challenges Defendant Gladden's motion, however, to the extent that she contends that it lacked a reasonable basis to pursue this matter as an interpleader and is not entitled to attorneys' fees and costs. (*Id.*).

Shortly after depositing the Life Insurance Benefits, MetLife moved for discharge. (ECF No. 28). Defendant Gladden filed a response noting that she does not object, and MetLife replied. (ECF Nos. 29; 30).[1] In March 2016, MetLife's counsel Thomas Bundy withdrew from the case and was replaced by Gail Westover. (ECF Nos. 31; 32; 33).

## II. Plaintiff MetLife's Motion for Discharge

### A. Standard of Review

An interpleader action involves two steps or stages. 7 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1714 (3d ed. 2001); *see Rapid Settlements, Ltd. v. U.S. Fid. & Guar. Co.*, 672 F.Supp.2d 714, 717 (D.Md. 2009). In *Metro. Life Ins. Co. v. Vines*, No. WDQ-10-

---

[1] Defendant Gladden's position in her motion for summary judgment is inconsistent with her response to MetLife's motion for discharge. In her summary judgment motion, she asserts that it was unreasonable or improper for MetLife to initiate this interpleader action. (ECF No. 23, at 5). Responding to the motion for discharge, however, Defendant Gladden does not oppose the discharge of MetLife from the case at this stage. (ECF No. 29 ¶ 1).

6

2809, 2011 WL 2133340, at *2 (D.Md. May 25, 2011), Judge Quarles explained them:

> During the first stage, it must be determined whether the stakeholder has properly invoked interpleader. *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007); *Fed. Ins. Co. v. Parnell*, No. 6:09CV00033, 2009 WL 2848667, at *4 (W.D.Va. Sept. 3, 2009). The propriety of interpleader depends on whether the stakeholder "legitimately fears" multiple litigation over a single fund. The Court considers whether: (1) it has jurisdiction over the suit; (2) a single fund is at issue; (3) there are adverse claimants to the fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable concerns prevent the use of interpleader. *High Tech.*, 497 F.3d at 641; *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999).
> 
> If interpleader is proper, the Court may direct the funds plus interest to be deposited with the Clerk, dismiss the stakeholder with prejudice and discharge it from all liability with respect to the deposited funds, and prohibit the claimants from initiating or pursuing any action or proceeding against the stakeholder regarding the relevant insurance policy or plan. *See, e.g., High Tech.*, 497 F.3d at 641; [*Companion Life Ins. Co. v. Haislett*, No. 3:10-1586-JFA, 2010 WL 3879338, at *3 (D.S.C. Sept. 28, 2010)].
> 
> During the second stage, a scheduling order is issued and the case continues between the claimants to determine their respective rights. *See, e.g., Rhoades*, 196 F.3d at 600; *Leventis v. First Nat'l Ins. Co. of Am.*, No. 3:09–1561–JFA, 2010 WL 2595305, at *2 (D.S.C. June 23, 2010). The claimants engage in the "normal litigation processes, including pleading, discovery, motions, and trial." *High Tech.*, 497 F.3d at 641.

In federal interpleader actions, a district court has the authority to:

> issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. . . . Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361. Generally, the interpleader plaintiff will "admit liability, deposit the fund with the court, and be permitted to withdraw from the proceedings." *CMFG Life Ins. Co. v. Schell*, No. GJH-13-3032, 2014 WL 7365802, at *2 (D.Md. Dec. 22, 2014) (citing *J.G. Wentworth Origination, LLC v. Mobley*, 2012 WL 4922862 at *5 (D.Md. Oct. 12, 2012)); *see Parnell*, 2009 WL 2848667, at *4 ("[T]he Interpleader Act permits [the plaintiff] to [interplead] its [p]olicy limit and to obtain 'a discharge . . . from further liability' with prejudice, as well as a permanent injunction restraining claimants 'from instituting or prosecuting any proceeding in any State or United States court affecting the' [p]olicy." (citations omitted)).

**B. Analysis**

28 U.S.C. § 1335(a) grants the district courts original jurisdiction over interpleader claims involving at least $500.00 in funds or property and claimants of diverse citizenship.

> Developed over six hundred years ago by the common law courts of England, interpleader is a procedure used to avoid excessive litigation in instances of multiple claimants to a single stake. For the uncertain stakeholder, interpleader is the law's answer to the mythical dilemma of Scylla and Charybdis. Without the option of interpleading funds, and faced with genuinely competing claims to a stake, the stakeholder is left with the unappealing prospect of either choosing one claimant over the other and facing action by the disappointed suitor or holding the stake and awaiting suit by both. The repository of the Court provides the stakeholder with the only safe harbor when caught between such a rock and a hard place.

*Commerce Funding Corp. v. S. Fin. Bank*, 80 F.Supp.2d 582, 584-85 (E.D.Va. 1999) (citation omitted). Here, jurisdiction predicated upon the federal interpleader statute is proper. MetLife is a New York corporation; two of the defendants are Maryland citizens and two are citizens of Virginia. MetLife has already paid into the court registry $104,691.78 in Life Insurance Benefits pursuant to a free standing order (ECF Nos. 25; 27), but now seeks discharge (ECF No. 28). Responding to the motion for discharge, Defendant Gladden asserted that she

9

"has no objection to, and would welcome the discharge of MetLife from this case." (ECF No. 29, at 1).

MetLife is a disinterested stakeholder seeking a judicial determination as to the proper beneficiary of the Life Insurance Benefits. It does not contest its obligation to pay and has already deposited $104,691.78, which comprises the Life Insurance Benefits plus interest, into the court registry. Accordingly, MetLife has thus fulfilled its obligations with respect to the Plan and will be discharged from further liability.

**C. Recovery of Attorneys' Fees and Costs**

MetLife argues that it "is entitled to an award of its attorneys' fees and costs [reasonably incurred] in bringing this interpleader action where the parties could not resolve the potential conflict themselves." (ECF No. 28-1, at 9 (citing *Aetna Life Ins. Co. v. Outlaw*, 411 F.Supp. 824, 826-27 (D.Md. 1976))). Defendant Gladden requests that the court deny MetLife's recovery of attorneys' fees and costs in connection with this interpleader action. (ECF No. 29, at 2-4).[2]

"Despite the lack of an express reference in the federal interpleader statute to costs or attorney's fees, federal courts

---

[2] In her motion for summary judgment, Defendant Gladden again requests that the court deny MetLife's recovery of attorneys' fees because, she contends, "the withholding of the [Life Insurance Benefits] was without a reasonable factual basis." (ECF No. 23, at 5).

10

have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward." *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Sprague*, 251 F.App'x 155, 156 (4th Cir. 2007) (citations omitted). District courts have the discretion to award fees when "the party initiating the interpleader is acting as a mere stakeholder, which means he has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability." *Rapid Settlements*, 572 F.Supp.2d at 722 (quoting *Safemasters Co. v. D'Annunzio & Circosta*, No. K-93-3883, 1994 WL 512140, at *5 (D.Md. July 18, 1994)).

> The theory behind the award of attorneys' fees in interpleader actions, an exception to the usual American rule by which parties generally bear their own legal costs, is that plaintiff by seeking resolution of the multiple claims to the proceeds benefits the claimants and that plaintiff should not have to absorb attorneys' fees in avoiding the possibility of multiple litigation.

*Outlaw*, 411 F.Supp. at 826.

Here, MetLife meets the requirements of a disinterested stakeholder, as it acknowledges that it has an obligation to pay the Life Insurance Benefits under the Plan. Furthermore, MetLife has deposited the interpleaded funds into the court registry and requested that the court resolve the dispute over who is entitled to the Life Insurance Benefits. *See Metro. Life Ins. Co. v. Davis*, No. JFM-10-2785, 2011 WL 2148714, at *7

(D.Md. May 31, 2011). In order to consider Defendant Gladden's request to deny MetLife fees and costs, however, a review of the facts is necessary. *See Outlaw*, 411 F.Supp. at 826 (awarding attorneys' fees to the interpleader plaintiff when the "widow of the deceased, and prime beneficiary under the life insurance policies, was suspected in her husband's death but that the evidence as then known was inconclusive").

MetLife asserts that under Maryland law, potential beneficiaries could be "disqualified because they are suspected or involved in the Decedent's death." (ECF No. 1 ¶ 18). Maryland's common law slayer rule "generally provides that one who feloniously and intentionally causes the death of another may not profit by taking any portion of . . . the proceeds of the victim's life insurance policy." *Clark v. Clark*, 42 F.3d 1385, 1994 WL 669501, at *3 (4th Cir. 1994) (unpublished table decision) (citing *Ford v. Ford*, 307 Md. 105, 111-12 (1986)).[3] Given the Department's lengthy homicide investigation involving Defendants Gladden and Smith, MetLife could not "determine the proper beneficiaries of the Life Insurance Benefits without

---

[3] The applicability of Maryland's slayer rule is determined in a civil proceeding, and "[t]he burden of proof is on the party asserting the slayer's rule to show by a preponderance of the evidence that the homicide was felonious and intentional." *Clark*, 1994 WL 669501, at *3 (citing *Ford*, 307 Md. at 121). Here, no party asserts or provides evidence that Defendant Gladden is responsible – feloniously, intentionally, or otherwise – for the Decedent's death.

risking exposure of itself and the Plan to multiple liabilities." (ECF No. 1 ¶¶ 20-21). MetLife maintained periodic contact with Detective Hamlin and the Department from October 2010 through May 2013 to keep apprised of any developments and information regarding Defendants' complicity in the Decedent's death. Moreover, MetLife advised Defendants Gladden, Smith, and J.I. that their potential claims to the Life Insurance Benefits were adverse to one another and provided them "the opportunity to try to resolve the matter amicably in order to preserve the benefits from litigation costs and fees." (ECF No. 28-20, at 2). Receiving no response, MetLife initiated this interpleader action.

Although significant time elapsed between Defendant Gladden's Claim and the commencement of this interpleader suit, MetLife "acted reasonably expeditiously in its conduct of this matter." *Outlaw*, 411 F.Supp. at 826. Given the Department's homicide investigation and Defendants' "concomitant possible disentitlement to the insurance proceeds, [MetLife] faced the real possibility of bona fide conflicting claims to the [Life Insurance Benefits]. In light of this prospect, [MetLife] was entitled to a reasonable time to investigate the circumstances surrounding the claim." *Id.* Defendant Gladden cannot demonstrate that MetLife acted in bad faith or delayed unnecessarily in communicating with the Department and seeking

resolution among Defendants before filing the complaint in interpleader. Rather, MetLife moved diligently to initiate this interpleader action once it appeared that the Department's investigation was not coming to any swift resolution. Accordingly, Defendant Gladden's request that the court deny MetLife's recovery of attorneys' fees and costs will be denied. The court will direct MetLife to provide documentation and affidavits within 30 days specifying reasonable attorneys' fees and costs in connection with this action.

**III. Defendant Gladden's Motion for Summary Judgment**

Defendant Gladden moves for summary judgment seeking a court order entitling her to the Life Insurance Benefits without further delay and denying MetLife's request for attorneys' fees and costs. (ECF No. 23, at 5). Responding in opposition, MetLife asserts that it "does not oppose Defendant Gladden's summary judgment motion to the exten[t] she contends that there are no genuine factual disputes to a finding that she is the appropriate beneficiary and that she is entitled to the benefits as a matter of law." (ECF No. 26, at 2). Moreover, in response to MetLife's motion for discharge, Defendant Gladden contends "[t]hat there has always been agreement between all of the [defendants] . . . that [Defendant] Gladden, the primary beneficiary of 100% of the [Life Insurance Benefits] . . . , is the sole beneficiary of [the Plan], and that judgment should be

14

entered in her favor." (ECF No. 29, at ¶ 2). According to Defendant Gladden, the other defendants have not contested her entitlement. (*See id.* ¶ 3).

Defendant Gladden's motion for summary judgment is premature and misplaced. Defendant Gladden claims entitlement to the Life Insurance Benefits, but so does at least one other claimant. Defendant Beta Capital answered and asserts a claim to $6,695.00, plus attorneys' fees and interest. (ECF No. 11, at 4). The other defendants do not currently assert an interest. Defendant Smith is in default and has forfeited any interest. (ECF No. 22). The minor, J.I., has appeared, but disclaimed through counsel any interest in the proceeds. (ECF No. 18; *see* ECF No. 29, at 1). Defendant Gladden's motion challenges MetLife's complaint as to the potential disqualification of a beneficiary under Maryland's slayer rule. It is not addressed to the potential claims of the other defendants and does not address at all the claim of Defendant Beta Capital.

While no party appears to contend that Defendant Gladden is disqualified due to Maryland's slayer rule, the entire case cannot be resolved in the present posture. Accordingly, Defendant Gladden's motion will not be granted. Instead, Defendant Gladden will be designated as plaintiff for future proceedings and Defendants J.I., Smith, and Beta Capital will

remain defendants.  *See* 7 Wright, Miller, & Kane, *supra* § 1714 ("At this juncture, each claimant occupies an adversary position to the others and must proceed accordingly.").  Counsel for the remaining parties will be directed to confer and notify the court whether further pleading or discovery is requested.  If, as it appears, neither further pleading nor discovery is necessary, the case may proceed on summary judgment.  Any motions addressing present claims to the Life Insurance Benefits must be filed within 30 days.

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendant Gladden will be denied.  MetLife's motion for discharge will be granted.  A separate order will follow.

                                          /s/
                            DEBORAH K. CHASANOW
                            United States District Judge